

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN        AUSTIN 11, TEXAS

~~XXXXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

Honorable Jno. Q. McAdams
Commissioner, Department of Banking
Austin, Texas

Dear Mc. McAdams:             Opinion No. O-5384
                                  Re: Construction of Article 8, Ch.
                                  V, of the State Banking Code, 48th
                                  Legislature.

       This will acknowledge receipt of your letter requesting our opinion upon questions involved in the above subject matter. Article 8, Chapter V, of the Texas Banking Code of 1943, (not yet effective) is as follows:

"No bank shall charge or collect any loan fee or any other charge, by whatever name called, for the granting of a loan. Provided, however, a bank may require an applicant for a loan or discount to pay the cost of any abstract, attorney's opinion or title insurance policy, or other form of insurance, and filing or recording or appraisal fees. Expenses necessary or proper for the protection of the lender, and actually incurred in connection with the making of the loan may be charged, and further provided that a bank may charge any borrower the reasonable value of services rendered in connection with the making of any loan, including the drawing of notes, the taking of acknowledgments and affidavits, the preparation of financial statements, and the investigation or analysis of the financial responsibility of the borrower or any endorser, surety, or co-signer, in an amount agreed upon, but not to exceed One Dollar ($1) for each Fifty Dollars ($50) or fractional part thereof loaned; but the charges for such services shall not be deemed a loan fee or interest or compensation for the use of the money loaned; and the last charge next above shall not be collected unless the loan is actually made."

       Literally, your inquiry calls for an interpretation only of this Article, and ordinarily it is the policy of this department to confine our opinions to the specific questions propounded, but where such specific questions by necessary implication involve the constitutionality of a statute, this policy should not apply. To construe this Article, as you request, and to advise that the charges therein named and involved in your questions could be made and collected, would be to advise that they were not in violation of the Constitution. We have therefore considered the constitutional validity of this Article.

       Section 11 of Article XVI of the Constitution declares:

"All contracts for a greater rate of interest than ten per centum per annum, shall be deemed usurious, and the first Legislature after this amendment is adopted, shall provide appropriate pains and penalties to prevent the same; but when no rate of interest is agreed upon, the rate shall not

*exceed six per centum per annum.*"

No statute which authorizes the charging and collecting of interest in excess of ten per cent can in any event be valid. What is thus mandatorily forbidden by law can never be lawful. These indisputable principles require that we consider the statute to determine whether or not, and to what extent if any, it violates the Constitution.

Interest is compensation for money retained. The Constitution means today exactly what it meant when it was adopted, The word "interest", as used in the Constitution, means today what it meant when the Constitution was adopted and during all the years intervening. Our consideration of the statute is directed to that portion of Article 8 reading as follows:

"Provided that a bank may charge any borrower <u>the reasonable value of service rendered</u> in connection w th the making of any <u>loan</u>, including drawing of notes, <u>taking</u> of acknowledgments and affidavits, the preparation of financial statements, and the investigation or analysis of the financial responsibility of the borrower or any endorser, surety or co-signer in an amount agreed upon, . . ." (Emphasis ours).

The question for determination is whether or not such service charges constitute interest within the meaning of the Constitution. This subject has been repeatedly before the courts, and numerous decisions have been rendered. We cite several, though by no means all of them. In inverse chronological order they are as follows:

". . . It is held by the courts of this State and practically all other states of the Union, that as a general rule, when an agent of the lender charges and is paid by the debtor a commission or bonus in connection with a contract for a loan from his principal to a borrower andhis action in doing so is ratified by the lender, the transaction is usurious if the amount so paid, plus the amount charged and designated as interest, exceeds the amount allowed by law to be charged for the use or detention of the money."--Great Southern Life Ins. Co. v. Williams, 135 S.W. (2) 241.

". . . When it (the lender) disbursed the proceeds of this loan, it retained in its own hands $600 thereof. According to the statement which it furnished the borrower at the time of such disbursement, this $600 was retained as a 'commission' for making the loan. . . . If it was retained by the lender as commission for lending its own money, it would constitute interest as a matter of law. . . . If it was applied to the overhead cost of the lender's business, it would also be interest." --Eastern Mortgage & Securities Co. v. Collins, 118 S.W. (2) 479.

"It is clear that the expenses forming the consideration of note 2 were chargeable absolutely against the proceeds of that note or in other words were absolutely payable by appellees. (Sanders and wife). . . . The entire payments for the first year of the loan were therefore a credit against this expense debit; and not returnable in any way to appellees. . . . Considering the expenses as an improper charge and therefore as interest, the transaction was

manifestly usurious in the light of the construction of the application most favorable to appellants." -- Baltimore Trust Co. v. Sanders et ux, 105 S.W. (2) 710. Followed in Eastern Mortgage & Securities Corporation et al v. Sanders et ux, 106 S.W.(2) 1118.

"'. . . If there be an intention to charge usury, no matter how the transaction may be veiled or disguised, the courts will look through the form to the substance of the transaction and condemn the contract as usurious. . . . The courts of Texas have exercised jealous vigilance in discovering and rebuking usury whenever and in whatever disguise it may have been shown to exist.'" Quoting 42 Tex. Jur. p. 885. -- Glover v. Buchanan, 104 S.W. (2d) 66.

"In submitting the above-mentioned issues to the jury, the trial court, in its charge, gsve the following definition of interest: '"Interest" as used herein means the compensation fixed by the parties to a contract for the use or forbearance or detention of money irrespective of the term or name applied to it by the parties.'

". . . In this connection, had the definition of interest as prescribed by article 5069 alone been given, the jury might not have understood that interest indirectly charged or interest concealed was still interest at law. We especially call attention to the fact that the contract of June 11, 1926, simply says that this $12,000 is paid 'for handling the loan.' It does not call it interest."

". . . When we come to consider what constitutes the contract in this case we are compelled to the conclusion that all of the instrumen s we have mentioned above, the contract of June 11, 1926, the bonds, the deed of trust, and the contract with reference to the $12,000, constitute the contract just as completely and just as effectively as if they were all comprised within the four corners of the instrument. . . ."

". . . We are fully aware of the fact that a borrower may lawfully pay an agent or a broker a fee to procure him a loan from a third party. We are also fully aware of the fact that it is not a violation of our usury laws for an agent or a broker to promote the sale of bonds, such as these, to legitimate investors, and to the general public, and charge the borrower a fee or commission therefor. In spite of this we are absolutely unable to find any fact or circumstance in this record that would constitute J. E. Jarrett Mortgage Company a promoter, an underwriter, a broker, or an agent for the borrower in this instance, or even raise a fact issue on these questions. On the other hand, the contracts and all surrounding facts completely and absolutely negative such conclusion. . . ."

". . . The judgments of the District Court and of the Court of Civil Appeals are both affirmed." Trinity Fire Ins. Co. v. Kerrville Hotel Co., 103 S. W. (2) 121.

The judgment of the Court of Civil Appeals thus affirmed was for usury. (91 S.W. (2) 973).

"If the Demming Investment Company was the agent of National Life Insurance Company for the purpose of lending its money, or if it was actually engaged in lending its own money, and, as a subterfuge for avoiding the effect of the usury statute, stipulated that second-lien note for $798.75 which was due February 1, 1924, represented a commission for making the loan, whereas it actually represented a part of the interest charged for the use of the money loaned, then the contract was usurious. . . ." --National Life Ins. Co. v. Schroeder, 94 S.W. (2) 868.

"Although the note was executed for the principal sum of $6000 the actual amount of the loan was but $5760, because at the very time plaintiff in error Adleson received $6000 from the agent Flynn he paid to Flynn as so-called commission $240. . . . His note in the principal sum of $6000 was given for a loan of but $5760. In such case, for the purpose of testing the contract for usury, the real principal is the amount actually received by the borrower. . . ." Adleson v. D. F. Dittman Co., 80 S.W. (2) 939.

       Upon this basis the rate of interest stipulated exceeded ten per cent.

". . . It is apparent that the only services rendered (the bank) were those necessarily required in making the ordinary loan. The interest allowed by statute is intended to compensate for such services. The evidence wholly failed to show that any such extra service was rendered as would authorize a charge therefor. The means employed in this case can not be used to avoid the effect of the usury statute. To allow extra charges for such services would destroy the purpose of the usury laws." Forreston State Bank v. Brooks, 51 S.W. (2) 645.

"In considering this provision further, in the two notes, we are of the opinion that it simply means to say, 'while this contract on its face shows that it is tainted with usury which is exacted during the first 25 months of the life of the contract, nevertheless if the borrower makes default and for any reason given the lender accelerates the maturity, the lender will then charge only 10% interest and will take all the payments that have theretofore been paid and credit them on the principal indebtedness and all interest accrued from the date of the loan at the rate of 10%.' To us this is tantamount to saying: 'We are charging usurious interest, but if anything happens we will apply it on the contract just as if we had charged no more than 10% per annum interest thereon from the beginning.' We do not believe that any such provision purges the contract of the usury provided for therein." --Federal Mortgage Co. v. Hawkins, 95 S. W. (2) 744.

       After a careful review of the authorities, this department held in Opinion No. O-3206 that House Bill No. 174, then pending before the 47th Legislature, was unconstitutional, saying among other things:

"We have pretermitted any discussion of specific provisions of House Bill No. 6. We do, however, wish to call specific attention to the following provisions appearing in Section 18 of this Bill, which reads: 'Furthermore, such charges

shall be presumed in any suit in any court in this State to be prima facie reasonable and proper, and such charges shall not be considered to be interest or compensation for the use, forbearance or detention of money.'

"If the foregoing provision of H. B. No. 6 is construed to mean that the charges authorized by Section 17 of the Act for expenses incurred and services rendered shall be authorized notwithstanding whether they are actually incurred or rendered, this provision would be invalid for the same reason that House Bill No. 420 of the 46th Legislature and House Bill No. 174 of this Legislature are invalid. As pointed out before the vice in House Bill No. 420 and in House Bill No. 174 rests in the fact that the bill authorizes the collection of charges in excess of the lawful rate of interest irrespective of whether such charges are for services actually incurred or services actually rendered. It is not, in our opinion, within the power of the Legislature under the Constitution to do this."

It is the considered opinion of this department that Article 8, Chapter V, of the Texas Banking Code, as enacted by the 48th Legislature, authorizing the service charges herein discussed, should be construed to apply only to those loans where such charges added to the stipulated interest shall not exceed ten per cent. This construction is compelled in order to give it any validity whatsoever, since if it be otherwise construed as authorizing such charges when their inclusion would exceed that rate would render the same wholly void.

These service charges are not for expenses properly chargeable to a borrower. They are "interest" within the meaning of the Constitution, since they are solely for the loan. The statute itself accentuates this conclusion. It declares that "the last charge next above shall not be collected unless the loan is actually made." If such charge be no charge unless a loan is made, it necessarily could be a charge only for the loan, and should be included as such in testing for usury.

In other words, we think the service charges therein named are as a matter of law interest within the Constitution, and should be considered in determining the usurious character of any loan.

Since we have not held Article 8 to be void, we will discuss your specific questions.

The word "renewal" in connection with a loan is of dubious meaning. It has a popular meaning which is not in exact accord with the strict legal significance of the term. In legal terminology, a renewal of a loan is an extension of the time of payment of an existing loan, whether the same be evidenced by a mere endorsement of the agreement upon the existing note, or whether it be evidenced by the execution of another or new note. In such a case there is at no time more than one loan. On the other hand, where a new note is executed and accepted by the holder of the old note, with the intention of discharging the old note, the transaction is not technically a renewal but on the contrary is a new loan. This is true, whether the new note is executed by the maker of the original note or not, and whether there be additional

parties makers or not. The taking of the newnote with the intention of discharge is a novation and substitutes completely the new note for the old one which has been discharged. We need not enter more fully into the details of the process of determining whether the transaction is a renewal in the sense of an extension, or whether it be a novation and a new loan made. There is a legal distinction between the two situations.

Where the transaction is an extension of the due date of the original note, there is but one loan, and no further charges whatsoever may be made except where, as in the original loan, they have been actually paid or incurred by the lender bank. Where, however, in connection with the extension an outlay is made or liability incurred by the lending bank, as for an abstract of title, attorney's opinions, a release, or the like such expenses would of course be a legitimate charge against the borrower, and would not constitute interest within the meaning of the Constitution and statutes governing usury.

As to service charges by the bank, other than actual expenditures made or liabilities incurred, what we have said above would apply, and they would be considered as interest upon a usury test. Upon any so-called renewal of a loan, amounting to a discharge of the old indebtedness and the creation of a newone, the new loan thus effected would be governed by precisely the same principles as an original loan.

You further inquire, " . . . what effect, if any, will the small loan injunction bill, passed by the 48th Legislature, have upon our banks operating under the section referred to above? We refer especially to the language contained in Section 2a of the measure of which the following is verbatim:

"Nothing in this Act shall in any way modify, alter or change any valid provision of Articles 8 of Chapter V of House Bill No. 79, Acts of the Regular Session, 48th Legislature, nor shall anything in this Act prevent charging of any actual and necessary expense, now or hereafter permitted and authorized by law, and such shall not be considered interest.

"In the trial of any application for injunction under this Act, there shall exist a prima facie presumption that the actual and necessary expenses of making any such loan was One ($1.00) Dollar for each Fifty ($50.00) Dollars, or fractional part thereof loaned; but this prima facie presumption shall extend only to the first note or debt owing at the same time by an individual to any person, firm, corporation, partnership or association and shall not apply to any renewal or extension thereof unless the original note or debt and all extensions thereof were for a period of not less than sixty (60) days.'"

You are advised that no valid provision of Article 8 of Chapter V of the Texas Banking Code is in anywise altered, changed or modified by what you call the "small loan injuntion bill." Therefore, the small loan injunction bill is cumulative of and not a substitution for the Banking Code, or any part thereof. When the two Acts are construed together, as they should be, it would follow that a bank lending money and charging usurious interest "habitually," as defined in the injunction Act, would be subject to the proceeding

therein authorized, that is to say, a bank which has been "habitually" charging usurious interest to a borrower may be enjoined according to the previsions of the injunction Act. A bank stands upon precisely the same footing as any other lender of money in any such proceeding.

We trust that what we have said above fully answers your inquiries.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Ooie Soeer

Ooie Speer
Assistant

APPROVED AUG 4, 1943
/s/ GROVER SELLERS
FIRST ASSISTANT
ATTORNEY GENERAL

OS-MR:egw

This opinion considered and
approved in limited conference.